IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2022

**STATE OF TENNESSEE v. TIMOTHY MITCHELL DAWSON**

**Appeal from the Criminal Court for McMinn County**
**No. 2017-CR-296    Sandra Donaghy, Judge**

**No. E2021-00913-CCA-R3-CD**

The defendant, Timothy Mitchell Dawson, appeals his McMinn County Criminal Court Jury conviction of theft of property valued at more than $1,000 but less than $2,500, challenging the admission of evidence about an unrelated theft purportedly committed by the defendant and the sufficiency of the convicting evidence. Because the trial court erred by admitting evidence of the defendant's uncharged conduct and because that error cannot be classified as harmless, we reverse the judgment of the trial court and remand the case for a new trial.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which, NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

Andrew E. Bateman, Athens, Tennessee, for the appellant, Timothy Mitchell Dawson.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Heather Miller and Matthew Dunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The McMinn County Grand Jury charged the defendant with the theft of a 2013 black utility trailer valued at more than $1,000 but less than $2,500 from the owner, Harold Thompson.

At the defendant's 2018 trial, Mr. Thompson testified that he noticed on March 29, 2017, that his utility trailer was missing from his Niota residence and that he reported the trailer stolen that day. He described the trailer as "a single axle two gate utility trailer" that was either 17 or 18 feet long. He said that he purchased the trailer from Lowe's

Home Improvement several years before it was taken for "roughly around $1,700." Mr. Thompson estimated the value of the trailer at the time it was taken as more than $1,000 and said that, had he listed it for sale at that time, he would have set the sales price at $1,500.

Mr. Thompson said that he kept the trailer behind an outbuilding "chained to a tree." He explained that he wrapped "a log chain" "around the frame of the trailer" and "around the tree" and then secured it with "two locks on the chain plus a lock on the tongue of the hitch of the trailer." He testified that the chain and all the locks were gone and that he had not given anyone permission to take the trailer.

Mr. Thompson testified that he had "motion-activated" surveillance cameras trained "straight on the outbuilding." After he noticed that the trailer was missing, Mr. Thompson checked the cameras and was able to recover images that he then turned over to the McMinn County Sheriff's Office ("MCSO"). The images, which were exhibited to his testimony, showed a man approaching Mr. Thompson's outbuilding on an ATV at 11:25 a.m. on March 29, 2017, connecting the trailer to the ATV, and then using the ATV to pull the trailer from behind the building.

MCSO Officers found what they believed to be Mr. Thompson's trailer sometime later. Mr. Thompson went to the location described by the officers and saw his trailer "in the woods." He confirmed that the trailer was his "by the VIN and of course I looked at it." In that same area, Mr. Thompson observed an ATV that appeared to be the one used to haul his trailer away. He said that he recognized the ATV by the "light bar on the front rack," which "kind of stood out" to him. Law enforcement officers permitted Mr. Thompson to hook the trailer to his personal vehicle and take it home.

During cross-examination, Mr. Thompson agreed that the title to the trailer described it as a six by 12 foot trailer and that he purchased it in 2012.

Seventy-four-year-old Ealion Lance testified that the defendant is his wife's second cousin and that he had known the defendant for the defendant's entire life. He said that his son and the defendant spent a lot of time together when they were young and that, as a result, the defendant was very familiar with Mr. Lance's 12-acre property in Niota. Mr. Lance recalled seeing the defendant on his property "right in the last part" of March 2017. He explained that he saw the defendant go "down through the field . . . to an old camper that had burnt." The camper had belonged to Mr. Lance's daughter, and she told Mr. Lance that the defendant was "cleaning this mess up." Mr. Lance said that the defendant was driving a truck with "a trailer on the back of it" that had an air conditioning unit and "four or five pieces of metal throwed on it." Either "the next day or the next," MCSO officers came and told Mr. Lance that they had "seen this trailer go in at the lower

-2-

end" of Mr. Lance's property and that "they could see it setting down there." Mr. Lance said that he told the officers that he did not know anything about the trailer but that they could "go down there and get it." He gave them instructions on "how to get in and they went around there and got it out." Mr. Lance said that the trailer could not be seen from his residence on the property.

Mr. Lance testified that the day after officers removed the trailer from his property, Detective Tim Carver returned to Mr. Lance's residence to ask about an air conditioning unit the officers had seen on his property. Mr. Lance said that he did not know that the unit was there until Detective Carver told him about it because he did not "ever go down there."

During cross-examination, Mr. Lance acknowledged that many people frequented his property to visit "a swimming hole on the lower end" of the property. He also acknowledged that this was not the first time that stolen items had been recovered from his property. As to the camper, Mr. Lance said that his daughter brought the camper to the property while Mr. Lance was out of town for his job and that the camper burned only a couple of days later. Mr. Lance testified that his insurance company paid him for the loss of the camper. Mr. Lance reiterated that he had seen the defendant with a trailer but said that it was not the same trailer that the police had recovered from Mr. Lance's property. Mr. Lance described the air conditioning unit that was on the defendant's trailer as an "[o]ld square looking unit" and added that he "would have called it junk, from what I seen on the trailer."

MCSO Corporal Kevin Gray traveled to Mr. Lance's residence to investigate the theft of a trailer on April 1, 2017. When he arrived, he spoke to Mr. Lance and observed "a black utility-style trailer a couple hundred yards down in the woods on Mr. Lance's property." Mr. Lance told Corporal Gray how to access the trailer. Corporal Gray "walked straight down to it through the woods" and used the VIN to confirm that the trailer was indeed the one stolen from Mr. Thompson. Someone contacted Mr. Thompson, who arrived a short time later and used his personal vehicle to recover the trailer.

As Corporal Gray went to the area where the trailer was located, he observed "a residential central heat and air unit just laying there in the open." He said that the unit "caught our attention" because "it was a fairly new looking unit," because "part of the ductwork and insulation was still kind of attached to it," and because "it was just laying in the middle of the field." Corporal Gray also saw "an ATV that was kind of pushed back into some denser shrubbery" at "the edge of the wood line." The ATV "was camouflage" and "had like an aftermarket LED-type, off-road-type light and a rack on the front of it. It looked like a gun rack." Mr. Thompson's trailer was located "[s]everal hundred yards past that point" and was "sitting there in the middle of the woods next to the creek." Tire tracks

in the area indicated that someone had "backed and dropped the trailer and left." Corporal Gray confirmed that the trailer displayed in the still photographs taken by Mr. Thompson's game camera was the same trailer that he had seen on Mr. Lance's property. He also confirmed that accessories on the ATV he observed in the still photographs were "consistent with the four-wheeler we took off Mr. Lance's property."

Later that same day, Corporal Gray learned that an air conditioning unit had been reported stolen from a residence located "less than a mile" from Mr. Lance's residence. Corporal Gray informed Detective Carter about the unit he had seen on Mr. Lance's property earlier in the day. The two officers returned to Mr. Lance's property, and the air conditioning unit was still lying in the field where Corporal Gray had seen it earlier in the day.

During cross-examination, Corporal Gray said that the air conditioning unit that he observed in Mr. Lance's field did not appear as though it had been in the field for a long time and that it was not near Mr. Thompson's trailer but was actually closer to Mr. Lance's house. Corporal Gray said that he ran the VIN for the ATV and that it had not been reported as stolen.

MCSO Detective Tim Carver, who investigated the theft of Mr. Thompson's trailer, testified that he obtained still photographs from Mr. Thompson's game camera within a few days of the reported theft of the trailer. Detective Carver said that he immediately recognized the defendant as the individual depicted in the photographs. Detective Carver obtained a warrant for the defendant's arrest for the theft of Mr. Thompson's trailer.

After he obtained a warrant for the defendant's arrest, Detective Carver took a report for the theft of an air conditioning unit. Later, while searching Mr. Lance's property, Detective Carver observed the stolen air conditioner lying in a field. The owner of the air conditioner responded to Mr. Lance's property and identified the air conditioner as the one stolen.

Detective Carver and Detective Greg Erps interviewed the defendant on April 17, 2017. A video recording of the interview was exhibited to Detective Carver's testimony and played for the jury. In the interview, the defendant admitted that he was the individual depicted in the still photographs taken by Mr. Thompson's game camera. The defendant said that he took the trailer because he believed that it belonged to him.

After a full *Momon* colloquy, the defendant elected not to testify and chose to present no proof.

-4-

Based upon this evidence, the jury convicted the defendant as charged. Following a sentencing hearing, the trial court sentenced the defendant, a Career Offender, to six years' incarceration, to be served consecutively to the sentence imposed in an unrelated case.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the admission of evidence related to the theft of the air conditioner and the sufficiency of the convicting evidence.

*I. 404(b)*

Prior to trial, the defendant provided notice pursuant to Tennessee Rule of Criminal Procedure 12 that he intended to rely on the affirmative defense of claim of right. Claim of right is defined in Code section 39-14-107:

> It is an affirmative defense to prosecution under §§ 39-14-103, 39-14-104 and 39-14-106 that the person:
>
> (1) Acted under an honest claim of right to the property or service involved;
>
> (2) Acted in the honest belief that the person had the right to obtain or exercise control over the property or service as the person did; or
>
> (3) Obtained or exercised control over property or service honestly believing that the owner, if present, would have consented.

T.C.A. § 39-14-107. In response to the defendant's notice, the State moved the trial court to conduct a hearing prior to trial to determine the admissibility of "evidence of another crime, to wit: the theft of a HVAC unit." In its motion, the State asserted that the defendant had been charged in a separate case with the theft of a heating and air conditioning unit that "was first observed at the residence of Ealion Lance by a bondsman on a date prior to April 1, 2017" and by MCSO deputies who went to Mr. Lance's residence to recover Mr. Thompson's trailer. The State argued that "the proximity of time and the location where the stolen items were found in relation to [the defendant] require that evidence of the theft of the HVAC unit be admitted in the above styled case."

-5-

On the first day of trial, before the commencement of proof, the trial court held a hearing on the State's motion. Both Corporal Gray and Detective Carver testified, as they did later at trial, that they had observed an air conditioning unit on Mr. Lance's property when they went to recover Mr. Thompson's trailer. Both acknowledged that the air conditioning unit was not located near Mr. Thompson's trailer; Corporal Gray said that "one was on the far left side of the property. One was on the far right." Mr. Lance testified as he did at trial that he had seen the defendant with the air conditioning unit on a trailer that was not the trailer that had been taken from Mr. Thompson. None of the State's witnesses provided any connection between the theft of the air conditioning unit and the theft of Mr. Thompson's trailer aside from the fact that both were discovered on Mr. Lance's property.

The State claimed that evidence of the theft of the air conditioning unit was admissible to rebut the defense of claim of right. The State also argued that "these are incredibly relevant to each other in both these cases because they portray the full facts." The State also argued that evidence that the defendant was seen with the stolen air conditioning unit "places the defendant in that location." The defendant argued that the State had misunderstood his position with regard to Mr. Thompson's trailer. The defendant noted that he had conceded that he took the trailer and that he intended to argue that he lacked the intent to deprive the owner of the property because "when he took it he had an honest and reasonable belief that that property belonged to him." In contrast, the defendant "has consistently denied taking the air conditioning unit." The defendant argued that evidence of the theft of the air conditioning unit was not admissible for any purpose under Rule 404(b) because "these cases are nowhere near as connected as the State has claimed" and that, in addition, the evidence was more prejudicial than probative and would confuse the jury "substantially."

The trial court found that the theft of the air conditioner was "relevant to the issues of this trailer case" because "Mr. Lance didn't have any explanation for that other than to attribute it to [the defendant] and he saw it [on the defendant's] trailer when [the defendant] was there." The court also found that there was "clear and convincing evidence of these two trailers, the air conditioning all on Mr. Lance's property." The court found that the admission of evidence of the theft of the air conditioning unit would be admissible on the issue of "lack of absence or a mistake and the intent of the defendant" and that it was "necessary for the jury to hear that whole story to sort it out." Finally, the court concluded that the probative value of the evidence was not outweighed by the danger of unfair prejudice."[1]

---

[1]    At the same proceeding, the trial court inexplicably concluded that "evidence of the stolen trailer should be excluded" in the trial of the stolen air conditioning unit "as its probative value is outweighed by the danger of unfair prejudice."

During Corporal Gray's testimony about the air conditioning unit, the trial court instructed the jury:

> [Y]ou've just heard evidence about some uncharged conduct. There was information about a stolen air conditioner. The law requires that you not consider this evidence to prove that the man on trial has a disposition or a propensity or a trait to commit that sort of crime. This evidence can only be considered by you for the limited purpose of determining whether it provides evidence of intent to complete the story of the crime, or lack of accident or mistake. So it's not offered to show that [the defendant] did or did not do something. It's only to help you evaluate his intent, lack of accident or mistake or to complete the story of the crime.

The court provided essentially this same instruction twice more during the trial as further evidence about the theft of the air conditioner was presented by the State.

In this appeal, the defendant asserts that the trial court erred by admitting evidence of the stolen air conditioner at the trial for the theft of Mr. Thompson's trailer. The State contends that the trial court did not err.

Questions concerning evidentiary relevance rest within the sound discretion of the trial court, and this court will not interfere with the exercise of this discretion in the absence of a clear abuse appearing on the face of the record. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence which is not relevant is not admissible," Tenn. R. Evid. 402, and even if evidence is deemed relevant, it may be still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Tenn. R. Evid. 403.

Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). This rule is subject to certain exceptions, however, including "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same." Tenn. R. Evid. 404(a)(1). In addition, "[e]vidence of other crimes, wrongs, or acts" may be admissible for "other purposes," such as proving identity, criminal intent, or rebuttal of accident or mistake. Tenn. R. Evid. 404(b); *State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005). To admit such evidence, the rule specifies four prerequisites:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). When the trial court substantially complies with the requirements of Rule 404(b), we review that court's ruling for an abuse of discretion. *See Thacker*, 164 S.W.3d at 240. "[I]n view of the strict procedural requirements of Rule 404(b)," however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Although the trial court utilized the framework required by Rule 404(b), the court did not actually find by clear and convincing evidence that the defendant had committed the theft of the air conditioning unit as required under the rule. Instead, the court found by clear and convincing evidence that both the air conditioning unit and Mr. Thompson's trailer were found on Mr. Lance's property. Additionally, instead of relying on the permissible uses of other act evidence, the trial court based its ruling, at least in part, on the need to "tell the whole story" of the offense, which has never been an avenue for the admission of evidence under Rule 404(b). The rules of evidence routinely result in the exclusion of evidence that is part of "the story" of the offense.

-8-

Because the trial court failed to substantially comply with the mandates of Rule 404(b), our review is de novo. In our view, the trial court erred by permitting the State to admit evidence about the stolen air conditioner. The trial court made its ruling prior to trial, at a time when it was not fully clear what the State's proof would be or what defense the defendant might advance. At that point, the court did not have enough information to determine the question of the air conditioner's relevance to any issue other than the defendant's propensity to steal. At the hearing, the evidence clearly established that the only connection between the stolen trailer and the stolen air conditioning unit were that both were found on Mr. Lance's property and allegedly taken by the defendant.

As the State's evidence came in at trial, it became clear that, indeed, the only connection between the stolen air conditioner and the defendant was Mr. Lance's testimony that he had seen the defendant with an air conditioning unit on a trailer on Mr. Lance's property on a day before officers found Mr. Thompson's trailer. The unit was not on Mr. Thompson's trailer but, instead, on a different trailer that the defendant was pulling with a truck and not, as in the case of Mr. Thompson's trailer, an ATV. Moreover, the air conditioning unit was not found near Mr. Thompson's stolen trailer. Under these circumstances, we cannot see how the theft of the air conditioning unit was relevant to any issue at trial, let alone an issue other than the defendant's propensity for theft. Additionally, the State actually presented more evidence about the theft of the air conditioning unit than it did the theft of Mr. Thompson's trailer. Essentially, the defendant was forced to defend himself not only against the charge of the theft of the trailer but also the uncharged theft of the air conditioning unit. As a result, questions about the air conditioning unit comprised the bulk of the questioning of the witnesses for both the State and the defense. Moreover, evidence about the stolen air conditioning unit necessarily included evidence that the defendant was seen in possession of a different trailer than that stolen from Mr. Thompson. In consequence, this evidence not only should have been excluded pursuant to Rule 404(b) but also pursuant to Rule 403 because its admission created "the danger of unfair prejudice," confused the issues, had the potential to mislead the jury, and certainly wasted the court's time. *See* Tenn. R. Evid. 403.

Because the State presented so much evidence about the theft of the air conditioning unit, we cannot say the admission of the evidence was harmless. The trial court did instruct the jury that "[t]his case is not about the theft of an air conditioner," but the sheer bulk of evidence presented about the theft of the air conditioner belied this assertion. The trial court should not have admitted evidence about the theft of the air conditioner and certainly should not have allowed the State to present so much evidence related to the theft of the air conditioner. The defendant is entitled to a new trial.

-9-

## II. Sufficiency

The defendant challenges the denial of his motion for judgment of acquittal and the sufficiency of the convicting evidence, arguing that the State failed to establish that the value of the trailer was more than $1,000. The State asserts that the evidence was sufficient.

A trial judge may "direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence." *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010) (citations omitted). The standard by which the trial court determines a motion for judgment of acquittal at that time is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Anderson*, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). Because the defendant presented no proof at trial, we combine our analysis of the denial of his motion for judgment of acquittal and the sufficiency of the convicting evidence. *See generally State v. Thompson*, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft is a "Class E felony . . . if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500)." T.C.A. § 39-14-105(a)(2). "Value," as relevant to the theft in this case, is defined as either "[t]he fair market value of the property or service at the time of the offense" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." *Id.* § 39-11-106(36)(A)(i)-(ii). Furthermore, Tennessee Rule of Evidence 701(b)

-10-

provides that "[a] witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b).

Here, Mr. Thompson testified that he purchased the trailer for $1,700 and that he would have asked a price of $1,500 had he put the item up for sale. He maintained that he could not have replaced the trailer for less than that amount. Although Mr. Thompson's description of the trailer varied, his testimony about its value did not. This evidence was sufficient to establish that the value of the property taken exceeded $1,000.

## III.  Conclusion

Because the trial court erroneously admitted evidence of an unrelated theft in violation of Tennessee Rules of Evidence 403 and 404(b) and because that error cannot be classified as harmless, we reverse the judgment of the trial court and remand the case for a new trial.

_____
JAMES CURWOOD WITT, JR., JUDGE